FRANCIS O. J. SMITH, *in Equity*, *versus* NEAL DOW *& als.*

The right to sell an equity of redemption of real estate exists only by statute; and, as no statute authorizes the sale of two or more equities for one entire sum, such sale is void, without any statutory provision prohibiting it.

Therefore, if there be two mortgages embracing the same piece of real estate, whether other pieces are included in one of the mortgages or not, a sale on execution of the rights in equity of redemption under both mortgages, at the same time and for one sum, is illegal and void.

And such sale is void, not only as against the judgment debtor, but as against any one connected with the title, or against whom it is adversely used.

BILL IN EQUITY.

The bill sets forth, that James Smith of Portland, being possessed of certain real estate in said Portland, on March 31, 1836, mortgaged the same to Neal Dow; that, on January 23, 1841, J. G. Caunell, deputy sheriff, having an execution in favor of Cyrus S. Clark against Smith, seized and advertised the right of said Smith to redeem the mortgaged premises, and sold the said right at auction to the plaintiff; that said Smith did not seasonably redeem the same; that said Dow has entered into possession of the premises, and has sold and conveyed certain rights therein to the other defendants.

The bill further complains, that said Smith, being seized of certain real estate in said Portland, of which the foregoing mortgaged premises were a part, on May 1, 1837, mortgaged said real estate to Roscoe G. Greene; that the aforesaid deputy sheriff, on January 23, 1841, having the above mentioned execution, seized, advertised and sold at auction to the plaintiff said Smith's right to redeem the premises from said mortgage; that said Smith did not seasonably redeem the same; that said Greene, or some person claiming under him, has entered into possession of the premises, and received the rents, and has sold and conveyed certain interests therein. And further, that the plaintiff has caused demand to be made upon the defendants to account for the

rents and profits of the mortgaged premises, which they have neglected to do. Wherefore the complainant brings his bill for the redemption of the premises.

Copies of the mortgages to Dow and Greene, and also of the execution on which the rights in equity were sold, of the officer's return that he had sold said rights to the plaintiff for $256,09, and of his deed to the plaintiff, accompany the bill.

The defendants demurred to the bill.

The case was elaborately argued by

*F. O. J. Smith*, pro se;

*Shepley & Dana*, for Tyler, Rice, McKeen and Patten, defendants; and

*E. H. Daveis*, for Rand, Greene and Lamson, defendants.

The opinion of the Court was drawn up by

APPLETON, C. J.—The complainant, on Jan. 23, 1841, purchased at public vendue two equities of redemption of James Smith, to redeem two mortgages given by him embracing in part the same premises, which were sold on execution against said Smith, for the gross sum of $246,09. Having this title, he brings this bill against one of the mortgagees and his assigns to redeem the mortgaged premises.

It is urged in defence, that he has no such title as enables him to redeem or as requires these defendants to answer, because it appears by the bill that two equities of redemption were sold for an entire sum—and because such sale is illegal and void.

In *Stone* v. *Bartlett*, 46 Maine, 439, the complainant derived his title from a sale of two equities for one entire sum. In reference to such a title, the Court say :—"but the statute regards an equity as an entirety and does not authorize the sales of numerous equities for one sum. The equities are several, and the sales must be several." So in *Fletcher*

v. *Stone*, 3 Pick., 250, it was held that two rights in equity of redeeming several parcels of land from several mortgages, when sold on one execution, ought to be sold separately and not for a gross sum, for the debtor has a right to redeem one equity sold and not the other.

While the necessity of several sales as against the debtor is conceded, it is insisted that a joint sale, even if void, as against the debtor, cannot be avoided by strangers — that the mortgagees, and those claiming under them, are such strangers — and that they cannot interpose this defect in the complainants to defeat his bill. To support this proposition, reliance is placed upon *Fletcher* v. *Stone*, before cited, where it was decided that a joint sale could not be avoided by a stranger.

It is obvious there can be but one equity of redemption of one and the same mortgage, and the person having such equity alone can maintain a bill to redeem — and to him alone is the mortgagee to render his account and release his title. It would seem, therefore, if a sale on execution of two equities for an entire sum was void as against the debtor, he might most assuredly bring his bill against the mortgagee to redeem. If, in such case, the mortgagee could not contest the title of the purchaser, then he may bring his bill — and thus the mortgagee might be liable to two several bills, at the suit of the debtor whose equities were illegally sold, and at that of the individual by whom they were purchased. In other words, this doctrine would sustain two equities of one and the same mortgage, one of which must obviously be null, yet the good and the bad title alike receive the protection of the law. Such a result is manifestly absurd, yet it is difficult to perceive how the complainant can maintain his bill without coming to this conclusion.

If the sale in gross is inoperative against the debtor, his title is unaffected thereby, and remains in him unimpaired. The sale has not disturbed his rights. If so, he can convey it, and his creditor may seize and sell the same on execution. In such case, the question is, had the judgment

debtor a title? If it be not so, then the result is, that the debtor may have a title perfect in himself, which he cannot convey, and which his creditor cannot reach, which would be absurd.

In the case of *Fletcher* v. *Stone*, the Court say, and correctly, that "there is no clause (in the statute) authorizing or prohibiting the joint sale of two or more equities." But the right to sell an equity on execution, exists only by statute. If there be no statute authorizing the joint sale of two or more equities, there is no authority for such sale. They are invalid without statutory authority. There is no need of a prohibitory statute to render them so.

In support of the position that a joint sale of several equities for a gross sum is invalid, the Court, in *Fletcher* v. *Stone*, say :—"on this point, we are of opinion that the debtor has a right, by a fair construction of the statute, to redeem one · equity, without redeeming the others, when several equities are sold on the same execution. This construction best agrees with the language of the statute, and generally the right of redemption is to be favorably considered. We think, also, that this right must necessarily be impaired, if not destroyed, should a joint sale be allowed to be valid as against the debtor. The principle of apportioning the relative value of property, which depends on opinion and is not founded on the basis of certainty, ought not to be resorted to except in cases of necessity."

The statute of this State, R. S., 1821, c. 60, §§ 17, 18, 19, under which the sale was made, is identical in language with that of Massachusetts, upon which the decision of *Fletcher* v. *Stone* was based. In the correctness of the views above cited we entirely concur. To sanction joint sales of numerous equities for one sum would defeat the debtor's conceded right of redeeming each equity at its own specific price as sold on execution.

It will thus be perceived that, nearly forty years ago, a joint sale of numerous equities for an entire sum was held to be void as against the judgment debtor. But, if void as

Smith *v.* Dow.

against him, how can it be valid as against any one? The rights of the purchaser depend upon a strict compliance with the provisions of the statute. The statute gives authority to sell several equities jointly and for a gross sum, or it does not. If it does not, then no title whatever can be acquired by proceedings unauthorized by law. If it does, then the debtor cannot defeat the title thus conveyed. The sale is not invalid as to the debtor and valid as to every body else. The officer can, or he cannot, legally sell numerous equities for a gross sum. If he can, how can the debtor avoid the sale? If he can avoid it, it must be for defects in his procedure—that is, because the several equities should have been sold for distinct sums;—and, if so, the right of avoidance is equally with his grantee or his judgment creditors. The sale of numerous equities on execution for an entire sum, if unauthorized by statute, is as invalid as would be that of the fee at auction. The consent of the debtor can no more confer authority upon an officer to sell than it can jurisdiction upon the Court to decide.

The sale cannot be both valid and invalid—valid when the debtor chooses so to consider it—invalid when he declines to give his assent. The statute gives authority to sell, as in the present case, or it does not. If it does, neither the debtor nor any one else can treat the sale as null. If it does not, all may. The debtor can avoid only because it is a nullity. If null as to him, all others may with equal success contest its validity.

The Court say truly, in *Fletcher* v. *Stone*, that, as against the debtor, the authorizing a joint sale of equities would deprive the debtor of his right of redeeming a particular mortgage, from the impossibility of determining the precise sum for which it was sold, and which should be tendered for its redemption. Hence, it was decided, that the sale should not be in that mode—or, if so made, that as to the debtor, he might avoid them. If he can, it has been seen that the right of contesting their validity cannot be limited to him alone.

Further, it is obvious that where numerous equities are

sold for a gross sum, the proceeds would ordinarily be less than when each equity is sold separately. The amounts to be redeemed would vary. Purchasers might be willing to redeem one mortgage and not another, yet they might be forced to bid on two equities when they intended only to redeem one. Hence, the price of the equities sold together would be less than the aggregate sum received from the separate sale of each equity. These views, as applied to the several sales of distinct parcels of land, have been adopted in equity. In *Woods* v. *Monell & al.*, 1 Johns. Ch., 502, Chancellor KENT says:—"it is, in general, the duty of the officer to sell by parcels, and not the whole tract in one entire sale. To sell the parcels separately, is best for the interest of all parties concerned. The property will produce more in that way, because it will accommodate a greater number of bidders, and tends to prevent odious speculations upon the distresses of the debtor."

"The demandant," (a subsequent attaching creditor,) remarks WILDE, J., in *Fletcher* v. *Stone*, "cannot be prejudiced by the mode of sale unless he can show that the amount of the sale was thereby reduced, and that if the equities had been sold separately there would probably have been a surplus of money after satisfying the tenant's execution." It would seem that, in such case, the joint sale of numerous equities for one gross sum may be avoided by a subsequent purchaser of one of the several equities thus jointly sold. It would seem, therefore, that the joint sale is void, not only as against the judgment debtor, but as against judgment creditors whenever it can be shown that separate sales of the several equities sold would have netted more than their joint sale. Here, too, the question again recurs—does the statute authorize both modes of selling? If so, the relative results as to the greater or lesser proceeds of sale, cannot affect the conclusion. Of two modes of sale, both authorized by law—one cannot become illegal, because, in the judgment of a jury, it may be less productive than the one which they may think should have been pursued. This

would make titles depend, not upon their conformity with the requirements of the statute, but upon the uncertain judgment of a jury as to the most eligible mode of sale, when, by the assumption, both may, as to third persons, be right. There is but one right mode of procedure. There may be many wrong ones.

Nothing is better established than that a party claiming title by proceedings *in invitum* must bring himself within the provision of the statute, under and by virtue of which he derives his right. The defendant is not to be disturbed, except by one having superior right, — and such superiority of right must depend on proof of a strict compliance with the requirements of law. No matter who may be the adverse party, though his title may be fraudulent as to creditors, he is none the less permitted to test the legality of proceedings against his grantee and to insist that he show a full compliance with the provisions of the law. "Whenever," remarks BELL, C. J., in *Russell* v. *Dyer*, 40 N. H., 173, "in order to make out his title to the land, he, (the judgment debtor,) introduces his levy, he fails, if that appear to be defective, whoever may be the adverse party. The debtor himself may object, and the fraudulent grantee, having his interest, stands in no worse position in this respect, because he has taken a conveyance which his grantor's creditors may disregard." These views received the sanction of this Court, in *Andrews* v. *Marshall*, 43 Maine, 278, in which, upon mature deliberation and satisfactory reasoning, the case of *Daggett* v. *Adams*, 1 Greenl., 198, was overruled.

"No doctrine," remarks BELL, C. J., in *Russell* v. *Dyer*, "has received more universal assent than that, in disposing of a debtor's lands by compulsory proceedings under a statute for the payment of his debts, the course prescribed is to be strictly followed. A failure to comply with any of the substantial requirements of the statute renders the proceeding void and leaves his title to the land unaffected." *Whittier* v. *Varney*, 10 N. H., 296; *Williams* v. *Amory*, 14 Mass., 20;

*Benson* v. *Smith,* 42 Maine, 414. It has been seen that the right to contest these proceedings is not limited to the judgment debtor—but that it is open to all, who are in any way connected with the title or against whom it is adversely used. It matters not whether the levy be upon the fee or upon an equity of redemption. A compliance with the requirements of the statute must in either case be shown.

The result to which we have arrived, is, we believe, in conformity with the uniform understanding of the profession. The debtor has a right to redeem each equity of redemption, when sold on execution, at the price for which it was sold, and interest. Each equity must be sold separately. If equities are sold jointly for an entire sum, the sale is void. The complainant, to maintain his bill, must show a statutory title. He has failed to do it, and the demurrer must be sustained. As he cannot by any amendments perfect his title, the bill must be dismissed.

*Demurrer sustained.—Bill dismissed with costs.*

RICE, CUTTING, KENT and WALTON, JJ., concurred.

DAVIS, J.—I concur in the result, and in all the opinion except what is said of the case of *Andrews* v. *Marshall,* 43 Maine, 278. I do not understand the appositeness of that case to the one at bar.

That related to personal property; this relates to real estate. In that, the party contesting the validity of the officer's proceedings was a *fraudulent* vendee; in this, no fraud is alleged. In that, the debtor expressly *consented* to the departure from the requirements of the statute; in this, no such consent is pretended.

In that case, the proceedings were not *in invitum ;* and it was precisely upon that point that I believed the decision erroneous. See same case, 48 Maine, 26. The debtor's *consent,* that the officer might sell the goods at private sale, made such a sale valid; and the fraudulent mortgagee had no right to object. It was the same as if the debtor had himself sold them to a creditor. " When a sale is void as

against a creditor," says SHEPLEY, J., in *Frost* v. *Goddard*, 25 Maine, 414, " the creditor is not restricted to the simple mode of proceeding on legal process, by attachment or writ, or seizure on execution. The sale, as to him, being void, he may entirely disregard it, and obtain a satisfaction of his debt by a subsequent purchase of the debtor."

It is the *consent* of the *debtor*, when he owns the goods, that justifies the officer in departing from the requirements of the statute. Such consent is a good justification, if he has possession of the goods, as against any *fraudulent vendee*, when the sale is in payment of a *creditor;* for, as between the fraudulent vendee and the creditor, the former has no rights.

But, in the case at bar, no such questions arise. It is not claimed that the mortgages were fraudulent; nor that any consent was given that both equities might be sold together by the officer, for one sum. His proceedings were therefore void.